## THE VEDAMORE.

(District Court, D. Maryland. June 28, 1904.)

1. COLLISION—FOG—NEGLIGENCE.

Defendant steamer, while seeking anchorage in Chesapeake Bay during fog, collided with libelants' schooner, laden with cord wood, with such force as to cut into the schooner's hull, though her deck was loaded 8 feet high, with wood which extended about 10 inches beyond her hull. At slow speed, with her engines full speed astern, the steamer could have stopped her headway in not more than twice her length, yet, when those on the steamer heard the schooner's fog horn, and the pilot gave orders to reverse, the vessels were so close that a collision could not be averted. The only lookout maintained on the steamer was in the crow's-nest on the foremast, 60 feet above deck, and over a flock of sheep laden on deck, the bleating of which tended to neutralize signals. There was evidence that the schooner was going at a speed not exceeding four miles an hour, and that she blew proper fog signals at very frequent intervals. *Held*, that the collision was caused either by the immoderate speed of the steamer, or by her failure to seasonably hear the schooner's foghorn, caused by failure to maintain a lookout in the bow, and that the steamer was therefore liable.

In Admiralty.

Robert H. Smith, for libelants.

Arthur George Brown, Charles W. Field, and R. E. Lee Marshall, for respondents.

MORRIS, District Judge. This was a collision in a fog off Smith's Point, in the Chesapeake Bay, between the steamer Vedamore and a small schooner-rigged sail vessel loaded with wood. The fog was of such density that vessels could not be seen more than 200 or 300 feet off, and the master of the steamship considered it was unsafe to navigate a vessel of the great size and momentum of the Vedamore in the Chesapeake Bay, and had urged the pilot to come to anchor. The pilot

¶ 1. Collision rules, speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.

sounded the depth, and, finding 17 fathoms, concluded that it would be better to take the steamer nearer to the westward shore, and more out of the track of vessels, before anchoring. He headed the steamship to the westward, going at a slow speed, and had stopped his engines preparatory to anchoring, when he heard the fog signals of another steamer approaching him in her course down the bay. He then, in order to avoid lying directly across the track of the approaching steamer, started his engines slowly ahead, directing his course to the southward until the approaching steamer had overtaken him and passed on his port side. Having again sounded the depth of the water while proceeding at a very slow speed, he was preparing to anchor, when the fog signal of the schooner was heard on the port bow. As soon as the signal was heard on the bridge, the pilot rang to stop and reverse the engines; but, before the steamship came to a standstill, it collided with the schooner, with the result that the schooner was so cut into that she filled with water, and would have overturned, but was held upright by the entanglement of her rigging with the bow of the steamer until the steamer, after the schooner's master and crew had been taken on board, backed out from her.

The proof in the case supports the contention that the schooner had a light wind, and was going at a moderate speed, not exceeding four miles an hour, and that she was blowing proper fog signals at very frequent intervals. The light wind was blowing from her directly towards the steamer, the water was smooth, and there was nothing in the weather or the water to prevent the schooner's horn from being heard on the steamer. As to the steamer's speed, the proof and all the surrounding circumstances support her contention that she was going at a moderate speed—probably not over four or five miles an hour, and perhaps less. The testimony of the master, the pilot, the second officer, and the wheelsman, all of whom were on the steamer's bridge, is that, as soon as the schooner's horn was heard on the bridge, the pilot signaled full speed astern to the engine room. And yet the vessels came together with sufficient force to cut into the schooner's hull, although her deck was loaded 8 feet high with cord wood, which extended out 10 inches beyond the sides of the schooner's hull. Going at slow speed, the steamer, with her engines full speed astern, could have stopped her headway in not more than twice her length; but it appears that when those on the steamer's bridge heard the schooner's fog horn, and the pilot gave the order, the vessels were so close together that the steamer did not stop her headway in time to avoid cutting down the schooner. I think the proof leaves only one probable explanation of this state of facts, and that is that the schooner's signals were not heard as soon as they should have been.

The steamer is of the largest class of ocean freight steamers. Her bridge is at least 150 feet from her bow. The only lookout was in the crow's-nest on the foremast, some 60 feet above the deck. The steamer was carrying on her deck a large number of sheep. The master, I think, said about 1,000 of them. When the schooner's fog signal was first heard on the bridge, the master said to the pilot, "I just heard either a fog horn or the bleating of a sheep;" and, the lookout just then

signaling by one stroke on his bell a vessel on the port bow, the pilot rang to the engine room, "Full speed astern," and the collision quickly followed. It seems not improbable that the attention of those on the bridge was directed to finding a suitable anchorage, and to getting ready to anchor, and to the danger from the other steamer which had been coming down behind them, and had only just then passed clear, and their hearing may have been distracted by the noises from the animals on deck. The lookout was up high on the foremast, about a hundred feet from the stem, and over the animals. This was not the best location for hearing the fog signals of the small sailing vessels, of which so many navigate the Chesapeake Bay. I should say that a man forward in the very bow would be in a better position. In so dense a fog, and in a water so frequented by vessels, every reasonable precaution should be observed; and it would seem that, under the surrounding circumstances, a lookout forward on the bow would have been a proper additional safeguard. It seems quite satisfactorily proved that the schooner gave fog signals which should have been seasonably heard. The mate of the schooner testified that on the schooner they heard at intervals three fog signals from the steamer, and that the schooner's signals were blown more frequently and at less intervals. If they had been seasonably heard, I cannot find that there was anything to prevent the steamer coming to a standstill in time to prevent damage to the schooner. The schooner having but little speed, the collision must have been caused either by the immoderate speed on the part of the steamer, or by her failure to seasonably hear the schooner's horn. In my judgment, the surrounding circumstances point to this latter cause as the fault to which the collision is attributable.

Decree in favor of the libelants.